1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

12

THE BOEING COMPANY,

CASE NO. C18-0567-JCC

13

            Plaintiff,

CONSENT DECREE

14

   v.

15

UNITED STATES OF AMERICA,

16

            Defendant.

17

18      This matter comes before the Court on the parties' stipulated motion to enter proposed

19 consent decree (Dkt. No. 26). Having thoroughly considered the proposed consent decree, the

20 Court FINDS that it is fair and reasonable, both procedurally and substantively, consistent with

21 applicable law, entered in good faith, and in the public interest. Therefore, the Court GRANTS

22 the stipulated motion (Dkt. No. 26) and ENTERS the following consent decree:

23     //

24     //

25     //

26     //

     //

**TABLE OF CONTENTS**

I.      BACKGROUND ............................................................................................... 1

II.     JURISDICTION ............................................................................................... 2

III.    PARTIES BOUND ........................................................................................... 2

IV.     DEFINITIONS ................................................................................................. 2

V.      PAYMENT OF RESPONSE COSTS ............................................................. 7

VI.     COVENANTS ................................................................................................. 12

VII.    EFFECT OF SETTLEMENT; CONTRIBUTION ....................................... 13

VIII.   RETENTION OF RECORDS ........................................................................ 15

IX.     NOTICES AND SUBMISSIONS ................................................................. 17

X.      RETENTION OF JURISDICTION .............................................................. 18

XI.     MODIFICATION ........................................................................................... 18

XII.    SIGNATORIES/SERVICE ........................................................................... 19

XIII.   GENERAL PROVISIONS ............................................................................ 19

XIV.    FINAL JUDGMENT ..................................................................................... 21

//

//

//

//

//

//

//

//

//

//

# I. BACKGROUND

A. This case concerns a dispute between Plaintiff, The Boeing Company ("Boeing") and Defendant, United States of America ("United States"), regarding the allocation of responsibility for response actions and for the payment of Response Costs related to the Washington State Site, which is located at 7755 East Marginal Way South, Seattle, Washington, and other sites that Boeing and the United States may have owned or operated near the Lower Duwamish Waterway.

B. Boeing has filed a Complaint seeking reimbursement from the United States for Response Costs and a declaratory judgment of the United States' liability under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. §§ 9601-9675.

C. This Consent Decree is a full and final settlement of all claims by Boeing set forth in the complaint and any claims by Boeing against the United States regarding the Covered Matters.

D. The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Washington State Site and will avoid prolonged and complicated litigation between the Parties regarding the Covered Matters, and that this Consent Decree is fair, reasonable, in the public interest, and consistent with CERCLA.

E. This Consent Decree was negotiated and executed by Boeing and the United States in good faith and at arm's length and is a fair and equitable compromise of claims that were vigorously contested. This Consent Decree shall not constitute or be construed as an admission of liability by either Party or as an admission of violation of any law, rule, regulation or policy by

either Party.  Furthermore, this Consent Decree shall not constitute or be construed as an admission or denial by either Party with respect to any factual or legal allegation or issue.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II.     JURISDICTION

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9607, and 9613(b).

## III.    PARTIES BOUND

This Consent Decree is binding upon the United States and upon Boeing and its successors and assigns.  Any change in ownership or corporate or other legal status, including, but not limited to, any bankruptcy, transfer of stock, assets, ownership interests, or real or personal property, shall not alter the Parties' responsibilities and obligations under this Consent Decree.

## IV.    DEFINITIONS

Unless otherwise expressly defined in this Consent Decree, terms used in this Consent Decree that are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or its appendices, the following definitions shall apply for purposes of this Consent Decree:

"Affiliated Contractor" shall mean any business entity that serves as a subcontractor to Boeing on any of Boeing's Federal Contracts, or as a prime contractor for Federal Contracts, under which Boeing serves as a subcontractor.

"Air Force" shall mean the United States Air Force.

"Boeing" shall mean Plaintiff, The Boeing Company, a Delaware corporation, including its predecessors-in-interest, as well as its successors, assigns, designees, affiliates, and subsidiaries.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-75.

"Complaint" shall mean the complaint filed in this case, including any amendments thereto.

"Consent Decree" shall mean this Consent Decree.

"Covered Matters" shall mean any and all past and future claims for Response Costs, Natural Resource Damages, or claims regarding releases of Covered Substances under any provision of federal or state law, including but not limited to CERCLA, RCRA, state statute or regulation, contract, torts, equity or common law that were, could now be, or hereafter could be asserted against the United States arising out of or in connection with the Washington State Site, or arising out of or in connection with any other sites that both the United States and Boeing may have owned or operated from which Covered Substances may have been released at, in, or to the Lower Duwamish Waterway, but only to the extent such releases originated during the time of Boeing's ownership or operation of those sites. "Covered Matters" does not include (1) claims arising out of or in connection with releases of Covered Substances at or from sites that occurred when the United States was the owner or operator of such sites and Boeing was not the owner or operator of such sites, including but not limited to Federal Center South; (2) claims arising out of or in connection with new releases of Covered Substances occurring after the Effective Date but not arising out of or in connection with continuing releases resulting from contamination existing as of the Effective Date; or (3) personal injury claims asserted by third parties.

"Covered Substances" shall mean any solid or hazardous waste, hazardous substance, petroleum, pollutants, or other contaminants.

"USACE" shall mean the United States Army Corps of Engineers.

"Day" or "day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal or State holiday, the period shall run until the close of business of the next working day.

"Defendant" shall mean the United States.

"Department of Commerce" shall mean the United States Department of Commerce.

"Department of Defense" shall mean the United States Department of Defense, including its offices, agencies, activities, commands, and instrumentalities, and the Military Departments.

"Double Recovery" shall mean (1) any Third-Party Reimbursement of any of the Response Costs or Natural Resource Damages reflected by the payment by the United States pursuant to this Consent Decree, and/or (2) any compensation of any kind for Response Costs or Natural Resource Damages other than the Response Costs reflected by the payment pursuant to this Consent Decree, provided by the United States to Boeing or Affiliated Contractors, including, but not limited to, direct payments, Federal Contract payments or credits, and the compromise of any claims, causes of action, suits, or demands of any kind whatsoever in law or in equity for Response Costs, whether asserted against the United States or other persons or entities.

"DOJ" shall mean the United States Department of Justice and its successor departments, agencies, or instrumentalities.

"Effective Date" shall mean the date upon which the approval of this Consent Decree by the Court is recorded on the Court's docket.

"EPA" shall mean the United States Environmental Protection Agency and its successor departments, agencies, or instrumentalities.

"Federal Center South" shall mean the facility generally located at the intersection of East Marginal Way South and Diagonal Avenue, approximately bounded by the Duwamish River,

Diagonal Avenue, Colorado Avenue, and Hudson Street; variously known as Air Force Plant 75 (FUDS F10WA0239), Boeing Plant 12 (FUDS F10WA025500), or the Missile Production Center, including all real property currently or formerly owned, leased, possessed or used by the United States or Boeing at this location.

"Federal Contract" shall mean any prime contract, subcontract, or any other agreement transferring value between Boeing and a department, agency, or instrumentality of the United States, including, but not limited to, contracts for goods or services, grants, and cooperative agreements, regardless of whether Boeing is a prime contractor or subcontractor.

"GSA" shall mean the United States General Services Administration.

"Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year. Rates are available online at https://www.epa.gov/superfund/superfund-interest-rates.

"Lower Duwamish Waterway" shall mean the area bounded by Southwest Spokane Street on the north, South 112th Street on the south, and a distance of one mile east and west of the respective banks of the Duwamish Waterway.

"Natural Resource Damages" shall mean damages for injury to, destruction of, or loss of natural resources resulting from a release or threatened release of Covered Substances. Natural Resource Damages include the reasonable costs of assessing damages to natural resources, restoring injured resources to their baseline condition, and compensation for the interim loss of injured resources pending recovery.

"Paragraph" or "¶" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

"Parties" shall mean Boeing and the United States.

"Plaintiff" shall mean Boeing.

"RCRA" shall mean the Solid Waste Disposal Act, 42 U.S.C. §§ 6901 - 6992 (also known as the Resource Conservation and Recovery Act).

"Response Costs" shall mean all costs, including but not limited to direct and indirect costs, incurred or to be incurred by Boeing or any other person related to the cleanup of, response to, or the corrective action or closure associated with Covered Substances, including costs to comply with or implement any past or future federal, state, or local environmental requirement, whether voluntary or compelled, or otherwise address environmental conditions at or related to the Washington State Site and the Lower Duwamish Waterway. This includes any and all costs incurred by Boeing or any other person pursuant to CERCLA, RCRA, other federal law, state law, or common law. Response Costs also includes accrued Interest on all such costs and including all payments to, or costs of, Federal, State, local or other governmental authorities. Response Costs includes all costs for actions by Boeing to comply with specific or general environmental requirements and facility maintenance, development, repair, modification, compliance, or operational activities that are in any way related to environmental cleanup, in the past or in the future.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Federal Agencies" shall mean the Department of Commerce, the Department of Defense, GSA, and any other department, agency, or instrumentality of the United States that may be liable for Response Costs at or from the Washington State Site, or at any other sites from which

Covered Substances may have been released at, in or to the Lower Duwamish Waterway, and their respective predecessor and successor departments, agencies, or instrumentalities.

"State" shall mean the State of Washington.

"Third-Party Reimbursement" shall mean any payment of, or consideration for, Response Costs or Natural Resource Damages that Boeing or an Affiliated Contractor receives from any person or entity other than the United States, including but not limited to direct payments, insurance or contract recoveries, the discharge of any debt or obligation, or the satisfaction of any claims, causes of action, suits, or demands of any kind whatsoever in law or in equity.

"United States" shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA and the Settling Federal Agencies.

"Washington State Site" shall mean the area in Seattle and Tukwila, Washington 98108, depicted on the attached map. The Washington State Site includes property currently or formerly owned, leased, or possessed by Boeing, or on which Boeing operated, at 7755 East Marginal Way South (including the facilities formerly designated or referred to as Boeing Plant 2 and/or Air Force Plant 17 and all the surrounding area within the boundaries shown on the attached map, as well as North Boeing Field, also as depicted on the attached map), as well as the Slip 4 Early Action Area and the Duwamish Sediments Other Area.

"WDOE" shall mean the State of Washington Department of Ecology, and any successor departments or agencies of the State of Washington.

## V. PAYMENT OF BOEING'S RESPONSE COSTS AND NATURAL RESOURCE DAMAGES

As soon as reasonably practicable after the Effective Date of this Consent Decree, the United States, on behalf of the Settling Federal Agencies, shall pay to Boeing $51,000,000, which resolves the United States' alleged potential liability to Boeing for Covered Matters.

DOJ will request payment of this amount from the United States Department of Treasury as soon as practicable after the Effective Date. Said payment shall be made by Automated Clearinghouse ("ACH") Electronic Funds Transfer to the following account:

Beneficiary Bank: JPMorgan Chase
Account No.: 9102776607
Bank ABA: 021000021
Swift: CHASUS33
Beneficiary: The Boeing Company-SSG Division
Remarks Section: Attention/POC Brett Prodzinski

## 1. Interest.

In the event the payment by the United States in the paragraph above is not made within 120 days after the Effective Date of this Consent Decree, Interest on the unpaid balance shall be due and owing by the United States, such Interest beginning to accrue on the 121st day after the Effective Date and continuing through the date of the payment. In the event that the United States cannot make the payment due to an error in the account information provided by Boeing, any time limits for payments by the United States shall be tolled until after the correct account information is transmitted to the United States.

## 2. Compliance with the Anti-Deficiency Act.

All payment obligations by the United States under this Consent Decree are subject to the availability of appropriated funds appropriated for such purpose. No provision of this Consent Decree shall be interpreted as, or constitute a commitment or requirement, that the United States obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable federal law, regulation, or requirement.

### 3.    No Double Recovery.

(a)    Except for what has been previously disclosed to the United States in a document produced by Boeing dated August 7, 2015, and entitled "Washington State Site Chargeback Report" and a second document produced on behalf of Boeing dated August 2015 and labeled "The Boeing Company, Review of Potential Insurance Settlements Offset in CERCLA Claim: Washington State Site," and except for what is or may be identified under subparagraph (b) below, based upon its knowledge and belief and subject to the penalties of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* and other applicable law, Boeing hereby warrants that it has not sought or received, and shall not in the future seek or receive, any Double Recovery.  Within 180 days of entry of the date of this Consent Decree, Boeing shall repay the United States dollar for dollar any Response Costs as defined in Section IV, above, that were incurred and charged to Federal Contracts between January 1, 2015, and the effective date of this Consent Decree, plus any amounts included in existing Federal Contracts with performance periods during 2018 and later.

(b)    Boeing hereby further acknowledges that in addition to the items listed in paragraph (a), it may also have charged to the United States certain Response Costs and/or Natural Resource Damage Costs related to Covered Matters in contracts with the United States for the contract performance periods of 2015, 2016, 2017 and/or 2018, although at this time Boeing is unable to ascertain the precise amounts of such charges, if any.  Boeing shall take steps necessary to so ascertain the amount of such charges, if any, and, within 180 days of the date of entry of this Consent Decree, Boeing shall identify said amounts in a notice to the United States and Boeing shall pay the United States dollar for dollar the amount of any Response Costs and/or Natural Resource Damage Costs related to Covered.

Matters that may have been charged to Federal Contracts in calendar years 2015 through 2017 since the date of the Chargeback Report, and/or any Response Costs and/or Natural Resource Damage Costs related to Covered Matters included in existing Federal Contracts with performance periods during calendar year 2018 and later. Said payments shall be made in the form of credits on ongoing Federal Contracts between Boeing and the Air Force, USACE, or the Department of Defense or any other Component, office, agency, command, or instrumentality thereof (collectively, the "Department of Defense"), said Federal Contracts to be identified by the Department of Defense, or, at the option of the Department of Defense, shall be made in such other form as the Department of Defense directs.

(c) Boeing shall not include in any claim, contract charge, reimbursement request, or invoice to the United States any costs that are Response Costs or Natural Resource Damage Costs related to Covered Matters for which it has received payment either under this Decree or through Third-Party Reimbursement, whether such a claim or invoice is submitted pursuant to any Federal Contract, or any claim, cause of action, suit, or demand of any kind whatsoever in law or in equity. All such costs, whether direct or indirect, shall be deemed to be and shall be identified in Boeing's accounting system as "mutually agreed to be unallowable" costs subject to Federal Acquisition Regulation ("FAR") 31.201-6, Accounting for Unallowable Costs, and Cost Accounting Standard ("CAS") 405 (including any subsequent amendments or modifications to FAR 31.201-6 and CAS 405) and thus excluded from any billing, claim, or proposal applicable to any Federal Contracts, including, but not limited to, any final billing, final contract cost proposal, or final overhead rate proposal.

(d)     Boeing shall not claim or receive Response Costs and/or costs incurred to address Natural Resource Damages related to Covered Matters pursuant to any indemnification, hold-harmless, or other provision in any Federal Contract.

(e)     Boeing shall comply with CAS 405 (including any subsequent amendments or modifications thereto) when accounting for unallowable costs in any billing, claim, or proposal applicable to any Federal Contract.  CAS 405 shall apply even if Boeing is not otherwise subject to CAS.

(f)     Any costs rendered unallowable under the terms of this Consent Decree, if included by Boeing in any billing, claim or proposal applicable to any Federal Contract and not returned in accordance with paragraph (h) below shall be deemed to be costs that have been "determined to be unallowable" and therefore subject to penalties within the meaning of FAR 42.709-1, clause 52.242-3 (Penalties for Unallowable Costs), and related provisions.

(g)     Boeing shall provide a complete copy of this Consent Decree to the administrative contracting officials of the United States with cognizance over future Response Costs and/or costs incurred to address Natural Resource Damages related to Covered Matters and to the responsible Boeing official or employee with the responsibility for implementing the obligations or requirements of this Consent Decree.  At present, these include the Boeing Engineering, Test, and Technology Divisional Administrative Contracting Officer ("ET&T DACO"); the Boeing Defense, Space & Security Home Office Divisional Administrative Contracting Officer ("BDS Home Office DACO"); the Boeing Corporate Home Office Corporate Administrative Contracting Officer ("Corporate CACO"); the Boeing Information & Analytics Divisional Administrative Contracting Officer ("I&A DACO"); and the Boeing Enterprise Services Group Divisional Administrative Contracting Officer ("ES DACO").   Any changes to the titles, duties or

responsibilities of these Boeing positions will not relieve Boeing of the obligation to provide a copy of this Consent Decree to any Boeing official or employee with the responsibility for implementing the obligations or requirements of this Consent Decree at any time.

(h)     In the event that Boeing or an Affiliated Contractor receives a Double Recovery, within 90 days after such receipt, Boeing shall repay the United States dollar-for-dollar in the amount of the Double Recovery.  Such amount shall accrue interest as described in 26 U.S.C. §§ 6621 and 6622 from the date on which it was received.  If a Double Recovery is received from the United States pursuant to a Federal Contract, Boeing shall notify the cognizant Contracting Officer for that Federal Contract in writing within 30 days after discovery of such receipt, and reimburse the United States by transmitting a sum equal to the amount of the Double Recovery in accordance with written instructions provided by the cognizant Contracting Officer.

## VI.    COVENANTS

### 1.    Covenant Not to Sue.

Upon the Effective Date, Boeing forever releases, discharges, covenants not to sue, and agrees not to assert any claims or causes of action against the United States, or its officers, contractors, or employees, with respect to Covered Matters.

### 2.    Indemnification by Boeing.

Boeing shall indemnify and hold harmless the United States and its officers, contractors, or employees against any and all past and future claims, demands, orders, causes of action, and/or judgments against the United States by any person, company, organization or entity arising from or related to Covered Matters.  This includes, but is not limited to, any third party claims or demands against the United States asserted by parties other than Boeing who, along with Boeing, are participating in the Lower Duwamish Waterway allocation process in which Boeing is currently participating, only if and to the extent those claims or demands arise from or

relate to the Covered Matters. The United States shall give Boeing written notice pursuant to Section IX, below, of any claim of which it is aware and for which the United States intends to seek indemnification pursuant to this Paragraph. Upon Boeing's request, the United States shall provide documentation relating to the request for indemnification under this Section.

Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d), or any government contract.

Nothing in this Consent Decree shall affect any determination as to the existence of Natural Resource Damages in or around the Washington State Site or the Lower Duwamish Waterway or, to the extent such Natural Resource Damages exist, whether the United States has any responsibility for them.

## VII.    EFFECT OF SETTLEMENT; CONTRIBUTION

Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. Except as provided in Section VI (Covenants by Boeing), the Parties expressly reserve any and all rights (including, but not limited to, pursuant to Section 113(f) of CERCLA, 42 U.S.C. § 9613(f)), defenses, claims, demands, and causes of action that each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Covered Matters against any person not a Party to this Consent Decree. Nothing in this Consent Decree diminishes the right of the United States, pursuant to Section 113(f)(2) and (3) of CERCLA, 42 U.S.C. § 9613(f)(2)-(3), to pursue any such persons to obtain additional costs of response or Response Actions and to enter into settlements that give rise to contribution protection pursuant to Section 113(f)(2).

The parties agree, and by entering this Consent Decree the Court finds, that the United States is entitled under Section 113(f)(1) of CERCLA, 42 U.S.C. 9613(f)(1), and any other applicable provision of law, whether statutory or common law, to protection from claims for contribution brought by third parties for response costs and natural resource damages incurred or to be incurred by Boeing at the Washington State Site. For purposes of this and the next paragraph, "response costs" and "natural resource damages" shall mean "necessary costs of response" and "damages for injury to, or destruction of, or loss of natural resources" as those phrases are used in Section 107(a) of CERCLA, 42 U.S.C. § 9607(a). Nothing in this paragraph shall be interpreted to bar claims by third parties against the United States or Boeing for response costs or natural resource damages incurred or to be incurred by parties other than Boeing at the Washington State Site, including such third parties' own response costs and natural resource damages. This paragraph does not bar claims related to Covered Substances that were released from, transported from, or migrated from the Washington State Site to other areas, or that are released from, transported from, or migrate from the Washington State Site in the future to other areas, including but not limited to other parts of the Lower Duwamish Waterway, the East Waterway, or upland locations not included in the Washington State Site.

The United States reserves any rights it may have against Boeing or any other party, under CERCLA or any other federal or state law, to recover response costs the United States has incurred or will incur in connection with the Washington State Site or the Lower Duwamish Waterway, or to recover natural resources damages in connection with the Washington State Site or the Lower Duwamish Waterway, or to seek the performance of response actions or other injunctive relief in connection with the Washington State Site or the Lower Duwamish Waterway. Notwithstanding

the foregoing, the United States may not seek to recover from Boeing, under CERCLA or any other federal or state law, the payment made under Section V of this Decree.

## 1. Res Judicata and Other Defenses.

In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of Response Costs and/or Natural Resource Damage Costs, or other relief relating to Covered Matters, Boeing shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case.

## VIII. RETENTION OF RECORDS

Until ten years after the entry of this Consent Decree, Boeing shall preserve and retain all non-identical copies of records, reports, information or correspondence (hereinafter referred to as "Records") (including records in electronic form) now in its possession or control, or that come into its possession or control, that relate in any manner to Covered Matters, or the liability of any person under CERCLA with respect to Covered Matters, or any Natural Resource Damages claims or assessments associated with Covered Matters, regardless of any corporate retention policy to the contrary. This obligation shall specifically include the Washington State Chargeback Report dated August 7, 2015, and the report dated August 2015 and labeled "The Boeing Company, Review of Potential Insurance Settlements Offset in CERCLA Claim: Washington State Site" described in Section V of this Consent Decree, and documents reflecting and/or related to any and all charges described in Section V herein.

After the conclusion of the ten-year document retention period in the preceding paragraph, Boeing shall notify the Settling Federal Agencies and DOJ at least 90 days prior to the destruction

of any such Records, and, upon request by one of the Settling Federal Agencies or DOJ, Boeing shall deliver any such records to the requesting entity. Boeing may assert that certain Records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Boeing asserts such a privilege, it shall provide DOJ with the following: (1) the title of the Record; (2) the date of the Record; (3) the name, title, affiliation (e.g., company or firm), and address of the author of the Record; (4) the name and title of each addressee and recipient; (5) a description of the subject of the Record; and (6) the privilege asserted. If a claim of privilege applies only to a portion of a Record, the Record shall be provided to DOJ in redacted form to mask the privileged information only. Boeing shall retain all Records that it claims to be privileged until the United States has had a reasonable opportunity to dispute the privilege claim and any such dispute has been resolved in Boeing's favor. However, no Records created or generated pursuant to the requirements of this Consent Decree shall be withheld on the grounds that they are privileged or confidential.

This Section VIII shall not apply to records received by Boeing that remain subject to the confidentiality provisions of any mediation agreement between Boeing and third parties regarding the Lower Duwamish Waterway at the time that Boeing would otherwise be required to release them under this Section. Moreover, nothing in this provision negates or otherwise affects any obligations Boeing may have to retain information related to the Washington State Site or the Lower Duwamish Waterway, either during the ten years following entry of this Consent Decree or for a longer period, pursuant to federal or state law, or pursuant to other agreements between Boeing and the United States.

**IX. NOTICES AND SUBMISSIONS**

Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. Written notice as specified in this Section shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to Boeing and the United States, respectively.

**As to DOJ or the United States**:  Chief
U.S. Department of Justice
Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044-7611
Re: DJ # 90-11-6-19966

With a copy to:

HQUSACE
Office of the Chief Counsel
CECC-E
441 G Street, NW
Washington, DC 20314

**As to Boeing**:  Chief Counsel, Environment, Health and Safety Law Group
Office of the General Counsel
The Boeing Company
P.O. Box 3707, MC 7A-XP
Seattle, WA 98124-2207

With copy to:

Mark W. Schneider
Perkins Coie LLP
1201 Third Avenue
Suite 4900
Seattle, WA 98101-3099

## X.    RETENTION OF JURISDICTION

This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XI.    MODIFICATION

Any modifications to this Consent Decree shall be in writing, signed by the United States and Boeing, and shall be effective upon approval by the Court.

**XII. SIGNATORIES/SERVICE**

The undersigned representative of Boeing and the signatory for the DOJ certify that they are fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document.

Boeing agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified Boeing in writing that it no longer supports entry of the Consent Decree.

Boeing shall identify, on the signature page of this Consent Decree, the name, address, and telephone number of an agent who is authorized to accept service of process by mail on behalf of Boeing with respect to all matters arising under or relating to this Consent Decree.

The United States need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

**XIII. GENERAL PROVISIONS**

    **1.    Complete Agreement.**

This Consent Decree contains the complete agreement between the Parties regarding the subject matter addressed herein and fully supersedes all prior contracts, agreements, understandings, negotiations or discussions, oral or written, relating to the subject matter hereof. There are no warranties, representations, agreements or understandings, oral or written, relating to the subject matter hereof that are not fully expressed or provided for herein.

    **2.    Headings.**

Any paragraph or subparagraph headings or section titles in this Consent Decree are provided solely as a matter of convenience to the reader and shall not be construed to alter the meaning of any paragraph or provisions of this Consent Decree.

**3.    Governing Law.**

This Consent Decree shall be governed and interpreted in accordance with federal law.

**4.    Original Counterparts.**

This Consent Decree may be executed in original counterparts, all of which together shall be deemed to constitute one Consent Decree.  The execution of one counterpart by any Party shall have the same force and effect as if that Party had signed all other counterparts.

**5.    Application of Consent Decree to Successors and Assigns.**

This Consent Decree applies to, is binding upon, and inures to the benefit of the Parties and any successors, assigns, and designees of the Parties.  Any change of ownership, corporate or other legal status of Boeing, including, but not limited to, bankruptcy, a transfer of assets of real or personal property, shall in no way alter the obligations of any of the Parties under this Consent Decree.  Boeing shall provide notice to the United States within thirty (30) days after the effective date of any change in corporate or other legal status.

**6.    No Use as Evidence.**

This Consent Decree shall not be admitted into evidence or admissible as evidence in any action or proceeding other than the above-captioned action in which this Consent Decree is entered, except for the following:

An action, cross-claim, or counterclaim brought by the United States or Boeing to enforce this Consent Decree; and

Any proceeding where the United States seeks to establish that it is entitled to protection from claims under this Consent Decree, or to enforce Boeing's indemnification of the United States under Section VI, or any action or proceeding related to the obligations of Boeing under this Consent Decree,

including any administrative or judicial proceeding related to or resulting from any Federal Contract.

Boeing warrants and represents that it has made no assignment or transfer of all or any part of its rights arising out of or relating to Covered Matters, including to the State of Washington, King County, or any other party. For purposes of this section, "assignment or transfer" shall not be deemed to include any general corporate reorganizations, mergers, assignments, transfers, or acquisitions that have occurred prior to or during the course of this litigation; provided, however, that Boeing has given the United States written notice of such assignment or transfer before the Effective Date, and that the parties to any such assignment or transfer have acknowledged or agreed, in writing, to be bound by the terms of this Decree.

## XIV. FINAL JUDGMENT

This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the Parties regarding the settlement embodied in the Consent Decree. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree. Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States and Boeing.

So CONSENTED and AGREED to by:


**FOR THE BOEING COMPANY:**


Date: <u>12/6/2018</u>        <u>/s/ Mark W. Schneider</u>
                            Mark W. Schneider
                            Partner
                            Perkins Coie LLP
                            1201 Third Avenue, Suite 4900
                            Seattle, WA 98101-3099


                            Agent for Services of Process:
                            Corporation Service Company as Registered Agent for
                            The Boeing Company
                            300 Deschutes Way SW, Suite 304
                            Tumwater, WA 98501


**FOR THE UNITED STATES OF AMERICA:**


Date: <u>12/6/2018</u>        <u>/s/ Amanda Shafer Berman</u>
                            AMANDA SHAFER BERMAN
                            U.S. Department of Justice
                            Environment and Natural Resources Division
                            Environmental Defense Section
                            P.O. Box 7611
                            Washington, D.C. 20044-7611

# Attachment
# (Dkt. No. 26-1 at 26)

## <u>ORDER</u>

UPON CONSIDERATION OF THE FOREGOING, the Court hereby finds that this Consent Decree is fair and reasonable, both procedurally and substantively, consistent with applicable law, in good faith, and in the public interest. The foregoing Consent Decree is hereby ENTERED. This Court expressly directs, pursuant to Fed. R. Civ. P. 54 and 58, ENTRY OF FINAL JUDGMENT in accordance with the terms of this Consent Decree.

DATED this 20th day of December 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE